Scott S. Humphreys (SBN 298021)
humphreyss@ballardspahr.com
Brianna R. Howard (SBN 314642)
howardbr@ballardspahr.com
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4333
Fax: 424.204.4350

*Attorneys for Defendant*
*Nexstar Media Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**BRIAN CAROLUS, SABER KHAMOOSHI, RYAN WU, and JOHN DEDDEH, individually and on behalf of a class of similarly situated individuals,**

**Plaintiffs,**

**v.**

**NEXSTAR MEDIA INC.,**

**Defendant.**

Case No. 3:24-cv-7790-VC

(Removed from San Francisco Superior Court, Case No. CGC-24-618799)

**DEFENDANT NEXSTAR MEDIA INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST CONSOLIDATED COMPLAINT FOR DAMAGES**

[Memorandum of Points & Authorities filed herewith]

**Hearing**:

| | |
|---|---|
| Judge: | Hon. Vince Chhabria |
| Dept.: | Courtroom 4, 17th Floor |
| Date: | April 3, 2025 |
| Time: | 10:00 a.m. |

TO THE HONORABLE COURT AND ALL PARTIES:

**PLEASE TAKE NOTICE** that on April 3, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Vince Chhabria in Courtroom 4 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Nexstar Media Inc. ("Nexstar") will and hereby does move to dismiss with prejudice the entire First Consolidated Complaint for Damages ("Complaint") filed by Brian Carolus, Saber Khamooshi, Ryan Wu, and John Deddeh ("Plaintiffs") and each and every claim alleged therein.

This Motion is made pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs have failed to state any claim upon which relief can be granted and/or lack standing to assert certain claims.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and other matters on file in this action, any further briefing, evidence presented or argument of counsel, and anything else the Court may properly consider.

Respectfully submitted,

DATED: February 13, 2025

**BALLARD SPAHR LLP**

/s/ *Brianna R. Howard*
Scott S. Humphreys
Brianna R. Howard

Attorneys for Defendant Nexstar Media Inc.

## STATEMENT OF THE ISSUES TO BE DECIDED

Pursuant to Civil Local Rule 7-4(a)(3), Nexstar sets forth the following statement of issues to be decided:

1. Whether the Court should dismiss Plaintiffs' California Data Access and Fraud Act claim because Plaintiffs have not sufficiently alleged that Nexstar made unauthorized access to their computer systems and circumvented barriers Plaintiffs put in place to prevent Nexstar from accessing their information, or that Plaintiffs suffered any form of "damage" or "loss" as required by the statute.

2. Whether the Court should dismiss Plaintiffs' California Invasion of Privacy Act claim because Plaintiffs have failed to sufficiently allege that Nexstar used a "pen register" to collect the modern analog of incoming or outgoing telephone numbers, or that Plaintiffs suffered any concrete harm.

3. Whether the Court should dismiss Plaintiffs' invasion of privacy claim because Plaintiffs have no legally cognizable privacy interest or reasonable expectation of privacy in the information they allege Nexstar collected, and they have failed to allege that Nexstar's actions amount to a serious invasion of any privacy interest.

4. Whether the Court should dismiss Plaintiffs' unjust enrichment claim because Plaintiffs have not sufficiently alleged that they retain a stake in any supposed profits garnered from the collection of their IP addresses.

5. Whether the Court should dismiss Plaintiffs' Unfair Competition Law claim because Plaintiffs have not sufficiently alleged that they have lost money or property.

## TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT .......... 1

II. FACT STATEMENT .......... 2

III. LEGAL STANDARD .......... 2

IV. ARGUMENT .......... 3

- A. Plaintiffs' CDAFA claim fails because Plaintiffs have not alleged that Nexstar made unauthorized access to their computer systems or that they suffered any form of "damage" or "loss" as required under the statute. .......... 3
  - 1. Plaintiffs have not alleged that Nexstar's use of trackers circumvented technological barriers put in place by Plaintiffs to prevent Nexstar from accessing their computer systems. .......... 3
  - 2. Plaintiffs have failed to plead the harm required to bring a viable claim under CDAFA Section 502. .......... 4
- B. Plaintiffs' CIPA claim fails as a matter of law because Plaintiffs have failed to allege facts sufficient to establish that Nexstar used a "pen register" or that they suffered any concrete harm. .......... 5
  - 1. Plaintiffs have not alleged that Nexstar used a "pen register" device as that term is defined by statute. .......... 5
  - 2. Plaintiffs lack standing to bring a CIPA claim because CIPA protects citizens' privacy, and Plaintiffs have no privacy interest in their devices' IP addresses. .......... 7
- C. Plaintiffs' allegations do not give rise to a viable invasion of privacy claim. .......... 8
  - 1. Plaintiffs have no legally protected privacy interest in the allegedly collected information. .......... 9
  - 2. Plaintiffs have no reasonable expectation of privacy over the allegedly collected information. .......... 11
  - 3. Nexstar's use of the trackers does not amount to a "serious invasion" such that it has violated the Plaintiffs' fundamental constitutional rights. .......... 13
- D. Plaintiffs' allegations do not give rise to a viable unjust enrichment claim. .......... 14
- E. Plaintiffs lack standing to bring an UCL claim because the UCL protects persons who have lost money or property, and Plaintiffs have not. .......... 15

V. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ....................5

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ....................3, 4

*Archer v. United Rentals, Inc.*,
195 Cal. App. 4th 807 (2011) ....................15

*Arndt v. Gov't Emps. Ins. Co.*,
Civ. No. MJM-23-2842, 2024 U.S. Dist. LEXIS 175249 (D. Md. Sept. 26, 2024) ....................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................2

*Ass'n of Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ....................2

*Aviles v. Liveramp, Inc.*,
No. 24STCV19869, Tentative Ruling (Cal. Super. Ct. L.A. Cnty. Jan. 28, 2025) ....................6, 8

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ....................15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................2

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................15

*Capitol Records, Inc. v. Thomas-Rasset*,
Civ. A. No. 06-1497, 2009 U.S. Dist. LEXIS 50075 (D. Minn. June 11, 2009) ....................6, 12, 14

*Casillas v. Transition Optical Inc.*,
No. 23STCV30742, Min. Order at 1, 4 (Cal. Super. Ct. L.A. Cnty. Apr. 23, 2024) ....................6

*Chrisman v. City of Los Angeles*,
155 Cal. App. 4th 29 (2007) ....................4

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................4

*Custom Packaging Supply, Inc. v. Phillips*,
2:15-CV-04584-ODW-AGR, 2015 U.S. Dist LEXIS 164523 (C.D. Cal. Dec. 7, 2015) ....................3

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................4

*Esparza v. Kohl's, Inc.*,
No.: 23-cv-01988, 2024 U.S. Dist. LEXIS 47564 (S.D. Cal. Mar. 18, 2024) ....................8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................11

*In re Google Android Consumer Privacy Litig.*,
No. 11-MD-02264-JSW, 2013 U.S. Dist. LEXIS 42724 (N.D. Cal. Mar. 26, 2013) ....................4

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................9

*Gutierrez v. Converse Inc.*,
No. 2:23-CV-06547-RGK-MAR, 2023 U.S. Dist. LEXIS 231056 (C.D. Cal. Oct. 27, 2023) ....................3

*Hammerling v. Google LLC*,
No. 21-CV-09004-CRB, 2022 U.S. Dist. LEXIS 217020 (N.D. Cal. Dec. 1, 2022) ....................13

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .................... *passim*

*Heiting v. Taro Pharms. United States, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ....................4

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ....................13

*Hill v. NCAA*,
7 Cal. 4th 1 (1994) ....................9

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ....................14

*Jones v. Bloomingdales.com, LLC*,
Nos. 23-3304, 23-3606, 2024 U.S. App. LEXIS 32581 (8th Cir. Dec. 24, 2024) ....7, 8, 9, 10

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ....7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ....7

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. L.A. Cnty. Mar. 13, 2024) ....6, 7

*Palacios v. Fandom, Inc.*,
No. 24STCV11264, Min. Order (Cal. Super. Sept. 24, 2024) ....6

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV04504, 2024 WL 3886811 (Cal. Super. Ct. L.A. Cnty. July 09, 2024) ....6

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 63161 (N.D. Cal. Apr. 5, 2024) ....3

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, Min. Order (Cal. Super. Oct. 2, 2024) ....5

*Sanchez v. Cars.com*,
No. 24STCV13201, Min. Order (Cal. Super. Ct. L.A. Cnty. Jan. 27, 2025) ....6, 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....7

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....8, 11

*Williams v. DDR Media, LLC*,
No. 22-cv-03789-SI, 2023 U.S. Dist. LEXIS 145489 (N.D. Cal. Aug. 18, 2023) ....13

*Williams v. Facebook*,
384 F. Supp 3d 1043 (N.D. Cal. 2018) ....4

*Wright v. Doe*,
No. 21SMCV00231, 2022 Cal. Super. LEXIS 18940 (Cal. Super. Ct. L.A. Cnty. Jan. 11, 2022) ....8, 11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................9

**Statutes**

Federal Rule of Civil Procedure 9(b) ....................3

Cal. Pen. Code § 630....................7

Cal. Pen. Code § 638.51(a) ....................5

Cal. Penal Code § 502(c)(1-2) ....................3

Cal. Penal Code § 502(c)(4)....................3

Cal. Penal Code § 502(c)(6-7) ....................3

California Data Access and Fraud Act, Cal. Penal Code § 502.................... *passim*

California Invasion of Privacy Act, Cal. Pen. Code § 630 et seq. .................... *passim*

California Unfair Competition Law, Bus. & Prof. Code § 17200, et seq. ....................1, 2, 15

Pen Register Act ....................6

**Other Authorities**

California Constitution, article I ....................1

*HIPAA Covered Entities and Business Associate*s, U.S.D.H.S.,
https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited Feb. 12, 2025) ....................10, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiffs' lawsuit arises from Nexstar's alleged use on www.thehill.com (the "Website") of ubiquitous "tracker" technologies, which Plaintiffs claim are capable, **in theory**, of collecting and sharing "browser and device data, IP addresses, and other identifying information." Putting the trackers' purported capabilities aside, the only information Plaintiffs allege the trackers **actually** collected is their devices' IP addresses. They claim the collection of IP addresses gives rise to claims under the California Data Access and Fraud Act ("CDAFA"), the California Invasion of Privacy Act ("CIPA"), Article I of the California Constitution, the California Unfair Competition Law ("UCL"), and for unjust enrichment. Even accepting Plaintiffs' allegations as true, their claims fail as a matter of law.

Plaintiffs' CDAFA claim fails because they have neither alleged that, by using trackers on its Website, Nexstar circumvented barriers Plaintiffs had put in place to prevent access to their information, nor that they suffered any legally cognizable "damage or loss" as a result.

Plaintiffs' CIPA claim fails because the pen register provision on which they rely does not apply to the information Plaintiffs allege was collected here—namely, their devices' IP addresses. Even if the pen register provision did apply, Plaintiffs have not alleged that that they suffered a concrete injury sufficient to give rise to Article III standing, because device owners have no legally protected privacy interest in their devices' IP addresses.

Plaintiffs' invasion of privacy claim fails for similar reasons. Plaintiffs have not alleged facts sufficient to establish any of their claim's key elements, including that they had a legally recognized privacy interest or reasonable expectation of privacy in their devices' IP addresses, or that the trackers' collection of IP addresses was an "egregious breach of social norms."

Plaintiffs' unjust enrichment claim fails because they have not plausibly alleged that their devices' IP addresses "carry financial value" or that they retain a stake any profits allegedly garnered from the collection of IP addresses. Nor can they under California law.

And finally, Plaintiffs' UCL claim fails because they have not alleged that they personally lost money or property "as a result of the unfair competition" as required under the statute.

The Court should dismiss the Complaint in its entirety, with prejudice.

## II. FACT STATEMENT[1]

Nexstar owns and operates www.thehill.com (the "Website). Compl. ¶ 4. Plaintiffs allege that embedded on the Website are third-party "tracker" technologies that Nexstar uses to sell advertising space that is personalized to Website visitors. *See id.* ¶¶ 59, 66. According to Plaintiffs, these trackers work by installing a small text file, called a "cookie," on Website visitors' devices. *Id.* ¶ 46. Plaintiffs allege the cookies are capable, in theory, of capturing "users' browser and device data, IP addresses and other identifying information." *See, e.g., id.* ¶ 6. However, the only specific information Plaintiffs claim the trackers actually collected from them are the IP addresses associated with the devices they used to visit the Website. *Id.* ¶¶ 53, 58, 62.

## III. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead facts from which a court can reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678, 129; *see also Ass'n of Gen. Contractors of Cal., Inc.*

---

[1] For purposes of this motion, Nexstar accepts as true all non-conclusory factual allegations in the Complaint.

*v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (improper to assume plaintiff "can prove facts that it has not alleged" or that laws were violated "in ways that have not been alleged").

## IV. ARGUMENT

### A. Plaintiffs' CDAFA claim fails because Plaintiffs have not alleged that Nexstar made unauthorized access to their computer systems or that they suffered any form of "damage" or "loss" as required under the statute.

1. Plaintiffs have not alleged that Nexstar's use of trackers circumvented technological barriers put in place by Plaintiffs to prevent Nexstar from accessing their computer systems.

Section 502 of the CDAFA is "an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, 2:15-CV-04584-ODW-AGR, 2015 U.S. Dist LEXIS 164523, at *8 (C.D. Cal. Dec. 7, 2015). Recognizing that Section 502 applies to unauthorized access to a plaintiff's computer, *see* Cal. Penal Code §§ 502(c)(1–2), (c)(4), (c)(6–7) (requiring acts done "without permission"), courts consistently interpret the statute to require that defendants have "circumvented technological barriers put into place to block access by the defendant." *Custom Packaging Supply*, 2025 U.S. Dist. LEXIS at *9; *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 63161, at *15 (N.D. Cal. Apr. 5, 2024); *Gutierrez v. Converse Inc.*, No. 2:23-CV-06547-RGK-MAR, 2023 U.S. Dist. LEXIS 231056, at *11 (C.D. Cal. Oct. 27, 2023) (accessing computer "without permission" means doing something "that overcomes technical or code-based barriers").

Plaintiffs have alleged no facts resembling the unauthorized "hacking" of a computer system envisioned by the CDAFA. No allegation suggests that Nexstar's installation of commonplace advertising technologies circumvented any technological barriers, much less barriers Plaintiffs specifically installed to prevent unauthorized access to their computer systems. Their CDAFA claim therefore fails to satisfy even a regular pleading standard, let alone Rule 9(b)'s heightened requirements. *See In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d

1155, 1181 (N.D. Cal. 2019) (applying Rule 9(b)'s heightened pleading standards to CDAFA claim). As Plaintiffs have failed to allege conduct resembling "'hacking' or breaking into a computer," *see Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007), the CDAFA categorically does not apply to Nexstar's purported actions, and the claim should be dismissed.

2. Plaintiffs have failed to plead the harm required to bring a viable claim under CDAFA Section 502.

To assert a civil claim under CDAFA, the complaint must sufficiently allege plaintiff "suffer[ed] damage or loss" in the form of either economic harm or actual injury. Cal. Penal Code § 502(e)(1); *Williams v. Facebook*, 384 F. Supp 3d 1043, 1050 (N.D. Cal. 2018); *see also In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264-JSW, 2013 U.S. Dist. LEXIS 42724, at *20 (N.D. Cal. Mar. 26, 2013) (requiring "damage or loss, beyond the mere invasion of statutory rights."). Allegations of economic injury due to loss of control over personal data will not suffice, as "such an injury is [not] contemplated by the CDAFA." *Heiting v. Taro Pharms. United States, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023). CDAFA's private right of action requires "some damage to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Id.*

"The majority of courts" that have considered whether the sharing of an IP address and other "identifying information" constitutes "damage or loss" under Section 502 have found that "such alleged privacy invasions do not qualify under the statute." *Id.* at 1020; *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 (N.D. Cal. 2023) (diminishment in value of information not sufficient to satisfy CDAFA's damage or loss requirement); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (loss of right to control or protect data not sufficient).

In this case, Plaintiffs allege harm in the form of "(i) invasion of privacy; (ii) statutory damages; (iii) the continued and ongoing risk to their personally identifying information that, once

out, never can be restored to its previous level of privacy; and (iv) the continued and ongoing risk of harassment, spam and targeted advertisements ….” Compl. ¶ 87. However, as the cases cited above make clear, allegations of wrongful access to IP addresses, privacy violations, and statutory harm are insufficient to plead the requisite damages under Section 502. As for the alleged “risk of harassment, spam, and targeted advertisements,” Plaintiffs have not supported those speculative averments with any factual allegations whatsoever. Aside from alleging that the trackers enable third parties “to serve personalized, targeted advertisements and to optimize user engagement,” *id.* ¶ 67, and to “leverage[] . . . advertising technology experience for publishers, advertisers, and consumers,” *id.* ¶ 68, nowhere in the Complaint do Plaintiffs suggest that the alleged collection and disclosure of their IP addresses actually exposed them to any “harassment.” Nor do they explain how the mere risk of receiving targeted advertisements constitutes an injury. Plaintiffs’ “conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss” and should be rejected here. *See Adams v. Johnso*n, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Plaintiffs’ CIPA claim fails as a matter of law because Plaintiffs have failed to allege facts sufficient to establish that Nexstar used a “pen register” or that they suffered any concrete harm.**

1. <u>Plaintiffs have not alleged that Nexstar used a “pen register” device as that term is defined by statute.</u>

To state a claim under CIPA’s pen register provision, Plaintiffs must allege facts sufficient to establish that Nexstar used a “pen register.” Cal. Pen. Code § 638.51(a). A “pen register” is a “device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication.” *Id.* § 638.50(b). Whether a device is a pen register depends on “the type of information being collected and not the device or process.” *Rodriguez v. Plivo Inc.*, No. 24STCV08972, Min. Order at 3 (Cal. Super. Oct. 2, 2024). That is, in

part, because while the definition of a pen register—historically, a mechanical device that records either incoming or outgoing telephone numbers—has been expanded over time to encompass more sophisticated methods of recording such information, the "category of information collected by pen registers as defined by the statute" has not been expanded beyond incoming or outgoing telephone numbers or their modern analog. *Palacios v. Fandom, Inc.*, No. 24STCV11264, Min. Order at 5 (Cal. Super. Sept. 24, 2024).

IP addresses are not expressly referenced in CIPA's definition of the types of information that pen registers collect. Even if they were, the statute would apply, at most, to the collection of website IP addresses "accessed by a [user's] computer"—the modern analog to incoming and outgoing telephone numbers—"**but not the computer's own IP address**." *See id.* at 4–5 (emphasis added); *see also Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. L.A. Cnty. Mar. 13, 2024) (sustaining demurrer of Section 638.51 claim based on collection of IP addresses); *Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 3886811, at *4 (Cal. Super. Ct. L.A. Cnty. July 09, 2024) (same); *Aviles v. Liveramp, Inc.*, No. 24STCV19869, Tentative Ruling at 1, 4 (Cal. Super. Ct. L.A. Cnty. Jan. 28, 2025) (sustaining demurrer of pen register claim alleging collection of IP addresses); *Sanchez v. Cars.com*, No. 24STCV13201, Min. Order at 1, 4–5 (Cal. Super. Ct. L.A. Cnty. Jan. 27, 2025) (same); *Casillas v. Transition Optical Inc.*, No. 23STCV30742, Min. Order at 1, 4 (Cal. Super. Ct. L.A. Cnty. Apr. 23, 2024) (same). To construe CIPA's pen register provision to apply to the collection of any IP address would effectively criminalize the Internet as it exists today. *See, e.g., Capitol Records, Inc. v. Thomas-Rasset*, Civ. A. No. 06-1497 (MDJ/RLE), 2009 U.S. Dist. LEXIS 50075, at *7 (D. Minn. June 11, 2009) (holding that, if the Pen Register Act were to construed to prevent recordation of IP addresses, "the Internet could not function because standard computer operations

require recording IP addresses so that parties can communicate with one another over the Internet"); *Licea*, 2024 WL at *4 (holding that public policy precludes interpretation of statute that would "render[] every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator"); s*ee also Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (explaining that "the rule of lenity" applies to interpretation of criminal statutes whether a court "encounter[s] its application in a criminal or noncriminal context," and a court is thus "constrained to interpret any ambiguity in the statute in [the defendant's] favor").

Here, Plaintiffs allege that trackers on Nexstar's website recorded **their own devices' IP addresses**, not the IP addresses assigned to servers sending incoming or outgoing communications. *See, e.g.,* Compl. ¶¶ 1, 6, 58. Because the collection of a device user's own IP address falls outside the purview of CIPA's pen register provision, Plaintiffs' CIPA claim fails.

2. Plaintiffs lack standing to bring a CIPA claim because CIPA protects citizens' privacy, and Plaintiffs have no privacy interest in their devices' IP addresses.

As its name suggests, California's Invasion of Privacy Act was enacted "to protect the right of privacy of the people of [California]." Cal. Pen. Code § 630. Thus, to assert a viable claim under CIPA's pen register provision, Plaintiffs must allege not only that Nexstar used a pen register, but also that Plaintiffs have a legally recognized privacy interest in the information collected by the pen register. *See, e.g., Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (holding that Article III's standing requirement "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) ("[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" (citations omitted)); *Jones v. Bloomingdales.com*, *LLC*, Nos. 23-3304, 23-3606, 2024 U.S. App. LEXIS 32581, at *8 (8th Cir. Dec. 24, 2024) (establishing concrete harm requires plaintiff to specifically allege that company

"captured her inputting and then deleting personal information like her social security number, medical history, bank account figures, or credit card information" or the equivalent).

Here, Plaintiffs allege only that trackers collected their devices' IP addresses—information that is transmitted as part of the normal operation of the internet. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (holding that "e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit"). Courts have routinely held that there is no legally cognizable privacy interest in a device's IP address. *See, e.g., Esparza v. Kohl's, Inc.*, No.: 23-cv-01988, 2024 U.S. Dist. LEXIS 47564, at *21 (S.D. Cal. Mar. 18, 2024) (finding the alleged capture of, among other things, the plaintiff's browsing history, "personal details," and IP address was insufficient to demonstrate a serious invasion of a protected privacy interest); *Wright v. Doe*, No. 21SMCV00231, 2022 Cal. Super. LEXIS 18940, at *5 (Cal. Super. Ct. L.A. Cnty. Jan. 11, 2022) (finding that plaintiff failed to establish a privacy interest in his IP address); *Aviles*, No. 24STCV19869, Tentative Ruling at 4 (same); *Cars.com*, No. 24STCV13201, Min. Order at 1, 6 (same). Indeed, the court in *Heeger v. Facebook, Inc*. specifically held that allegations of a privacy interest in a device's IP address, alone, do not give rise to a viable claim under CIPA. 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020).

Because Plaintiffs have failed to allege the interception of any private information, they lack standing to bring a CIPA claim. *See Jones*, 2024 U.S. App. LEXIS at *9 (joining "the overwhelming number of district courts [holding] that plaintiffs lack standing in cases like these where they don't allege the interception of private information" (citing *Arndt v. Gov't Emps. Ins. Co.*, Civ. No. MJM-23-2842, 2024 U.S. Dist. LEXIS 175249, at *19–20 (D. Md. Sept. 26, 2024))).

**C. Plaintiffs' allegations do not give rise to a viable invasion of privacy claim.**

To allege a violation of one's right to privacy under California's Constitution, a plaintiff must demonstrate: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy

under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the privacy interest. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021). Plaintiffs have not alleged facts sufficient to support even one of these elements.

1. <u>Plaintiffs have no legally protected privacy interest in the allegedly collected information.</u>

"Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." *Id.* (citing *Hill v. NCAA*, 7 Cal. 4th 1, 35 (1994)). Courts have not extended the concept of autonomy privacy to the collection of website data. *See id.* (citing *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019). Thus, for Plaintiffs to plausibly pleada protected privacy interest, they must allege facts sufficient to show that the trackers on the Website collected and shared information that violated their informational privacy interest.

Plaintiffs' claim fails outright because, as explained above, individuals have no informational privacy interest in the type of information that Plaintiffs allege the trackers collected—namely, IP addresses. *See Yoon*, 549 F. Supp. 3d at 1086 (holding that plaintiff had no informational privacy interest in her "keystrokes and clicks; pages viewed; shipping and billing information; date, time, and duration of visit; IP address and physical location; and browser type and operating system" such that she could state invasion of privacy claim under state constitution); *see also Jones*, 2024 U.S. App. LEXIS at *11; *Heeger*, 509 F. Supp. 3d at 1190.

Plaintiffs' vague and conclusory allegations that the Website's trackers collected and shared "browser and device data," "personally identifying information," and "addressing information," *see, e.g.*, Compl. ¶ 31, are not sufficient. At best, Plaintiffs' allegations establish

what information trackers are **capable** of collecting and what they could **theoretically** do with such information, not what they actually collected and did with any information purportedly collected about Plaintiffs. *See id.* ¶¶ 47 (explaining what website cookies "can include"), 49 (listing what a tracking pixel "often includes"), 50 (noting that third-party trackers "can" form user profiles). Plaintiffs' allegations merely "parrot internet musings about things [Nexstar] may or may not be doing, and which [P]laintiffs may or may not have experienced themselves" and "[do] nothing to fill in the substantive gaps" in the Complaint. *See Heeger*, 509 F. Supp 3d at 1187 (dismissing plaintiffs' CIPA and invasion of privacy claims where "few facts [were] alleged … without hedging on whether [defendant] actually d[id] what [plaintiff] accuse[d], or simply ha[d] the ability to do it"); *see also Jones*, 2024 U.S. App. LEXIS at *7 (finding "allegations concern[ing] what this technology is able to capture generally" insufficient).

Plaintiffs rely on the conclusory assertion that their privacy interests in their "personally identifying information and addressing information" are "recognized by the California Constitution, CDAFA, CIPA, HIPAA, and numerous other statutes." Compl. ¶ 147. But, as explained above, Plaintiffs' CDAFA claim does not hold water and, as the *Heeger* Court made abundantly clear, claims under California common law, the California Constitution, and CIPA are all insufficient in federal court when the only "concretely alleged" privacy interest is one in IP addresses. 509 F. Supp. 3d at 1190. And whether the information is protected under HIPAA is irrelevant—Plaintiffs are not claiming a HIPAA violation, nor do they offer any authority suggesting that a privacy interest under HIPAA equates to a privacy interest under the California Constitution. Even if HIPAA did apply, Plaintiffs' argument would fail because, as noted in the source material Plaintiffs cite in the Complaint, *see* Compl. ¶ 1 n.1, the HHS guidance finding a privacy interest in IP addresses was struck down by a federal court in June 2024. *See Use of Online*

*Tracking Technologies by HIPAA Covered Entities and Business Associate*s, U.S.D.H.S., https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited Feb. 12, 2025). Accordingly, Plaintiffs' invasion of privacy claim fails.

2. Plaintiffs have no reasonable expectation of privacy over the allegedly collected information.

"The existence of a reasonable expectation of privacy, given the circumstances of each case, is a mixed question of law and fact." *Heeger*, 509 F. Supp. 3d at 1193 (citing *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 597 (9th Cir. 2020)). While courts do consider what a user would reasonably expect in light of disclosures the defendant has made to the user regarding its use of the user's data, courts also consider the amount and nature of the data allegedly collected. *In re Facebook*, 956 F.3d at 602–03. Indeed, "[t]he question is not necessarily whether plaintiffs maintained a reasonable expectation of privacy in the information," but rather "whether the data itself is sensitive and whether the manner in which it was collected . . . violates social norms." *Id.*

IP address information is not "sensitive and confidential" such that one can have a reasonable expectation of privacy in it. *See Heeger*, 509 F. Supp. 3d at 1193; *see also Forrester*, 512 F.3d at 503; *Wright*, 2022 Cal. Super. LEXIS 18940, at *5. Even allegations that the data exposes a user's general location are insufficient. Indeed, to have a privacy interest in geographic information, the information must be more precise than that embedded in an IP address. For example, in *Heeger*, the plaintiffs alleged that Facebook "collected users' IP addresses, identified the users' locations through their IP addresses, then bundled that location information with other user information and monetized it by selling it for targeted advertising purposes." 509 F. Supp 3d at 1192. The court held those allegations were insufficient, as "a generalized location, such as one that locates a user no more precisely than within several city blocks, may not implicate much in the way of privacy concerns." *Id.* at 1193 (citations omitted). A plaintiff must allege that a

defendant has done more than "simply plot[] [the plaintiff's] IP address location," and instead make "specific, factual allegations" that the defendant "used an enhanced location determination technique based on data collected from other users . . . to more precisely pinpoint" the plaintiff's exact latitude and longitude at a certain time. *Id.* at 1191–92.

Here, Plaintiffs' allegations as to the geographic information accessible from their IP addresses are insufficient for two reasons. First, while Plaintiffs allege that IP addresses contain "geographical location information from which the state, city and zip code of a specific device can be determined" and "geolocation data that can be used to identify, track and target individuals in a very specific and precise way," Compl. ¶¶ 55, 82 (emphases added), Plaintiffs do not allege that the trackers were actually used to pinpoint anyone's location, or that an IP address is sufficient to determine a user's exact location beyond a zip code, *see id.* ¶¶ 55–56. *See also Heeger*, 509 F. Supp 3d at 1187 (observing that, once stripped away of all of the "filler" allegations about "[the defendant's] ostensible capacity to 'discern precise locations' from user data," the complaint alleged, at most, that all that "[the defendant] collected plaintiffs' IP addresses").

Second, the geographic information that Nexstar could have accessed by means of the IP addresses is not sufficiently specific such that Plaintiffs could have reasonably expected it to remain private. Like in *Heeger*, Plaintiffs fail to allege that the geographic information was ever "enhanced" beyond what is discernable from an IP address alone. Furthermore, it is a matter of common sense that any expectation of privacy a person might have in the geographic information associated with their IP address is soundly **not** reasonable when that information has been automatically shared with every single website the person has ever visited. *See Capitol Records*, 2009 U.S. Dist. LEXIS at *7 ("[S]tandard computer operations require recording IP addresses so that parties can communicate with one another over the Internet[.]").

For these reasons, Plaintiffs cannot state a viable invasion of privacy claim.

3. Nexstar's use of the trackers does not amount to a "serious invasion" such that it has violated the Plaintiffs' fundamental constitutional rights.

To state an invasion of privacy claim, Plaintiffs must allege "more than an intrusion upon reasonable privacy expectations"—the intrusion itself must be "highly offensive to a reasonable person, and sufficiently serious and unwarranted as to constitute an egregious breach of the social norms." *Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 295 (2009) (internal citations and quotations omitted). Like with other elements of the claim, courts consider the type of information accessed to determine whether the defendant's conduct could be considered "highly offensive to a reasonable person." *See Williams v. DDR Media, LLC*, No. 22-cv-03789-SI, 2023 U.S. Dist. LEXIS 145489, at *15 (N.D. Cal. Aug. 18, 2023) (finding information including "the date and time of plaintiff's visit to [defendant's] website, her keystrokes and clicks on the website, her name, her IP address, her geographic location, her address, and her phone number" to be "minimal" such that its collection was not highly offensive); *see also Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 U.S. Dist. LEXIS 217020, at *25 (N.D. Cal. Dec. 1, 2022) (finding no highly offensive intrusion where the information collected included a plaintiff's bank information, the car she drove, another plaintiff's religious beliefs, and shopping searches).

Here, Plaintiffs' Complaint sets forth only boilerplate and conclusory allegations that Nexstar's conduct constituted "a serious invasion of privacy that would be highly offensive to a reasonable person" and "a severe and egregious breach of social norms." Compl. ¶ 150. Plaintiffs claim Nexstar allegedly collected information "was personally identifying information protected by the California Constitution and numerous California and federal statutes," that Nexstar "did not have authorization" to collect or disclose the information, and that "the invasion deprived Plaintiffs

and Class members of the ability to control the dissemination and circulation of that information, an ability that is considered a fundamental privacy right." *Id*.

Again, Plaintiffs have not concretely alleged the collection of any information beyond IP addresses and the potential to determine the geographic information embedded in them. They do not identify any other information that may have been collected, such as their addresses, phone numbers, banking or car information, religious beliefs, shopping searches, or any combination thereof. Even if Plaintiffs **had** alleged that such information had been collected in addition to IP addresses, the cases cited above make clear that such allegations would still be insufficient. Moreover, collection of IP addresses cannot be considered "offensive" under California law, given that such interpretation would create a civil claim out of the automatic process that occurs every single time someone visits a website. *See Capitol Records*, 2009 U.S. Dist. LEXIS at *2–3. Because Plaintiffs have failed to allege any facts suggesting that Nexstar's use of the trackers amounted to a "serious invasion," their invasion of privacy claim cannot survive.

**D. Plaintiffs' allegations do not give rise to a viable unjust enrichment claim.**

To state a viable unjust enrichment claim, Plaintiffs must allege, at a minimum, that "they retain a stake in the profits garnered from the collection of their IP addresses." *Heeger*, 509 F. Supp. 3d at 1191 (internal citation and quotation marks omitted).[2] Here, Plaintiffs have not, and cannot, do so. Nor have they alleged that their IP addresses "carry financial value." *See id.* As detailed above, and as the *Heeger* court explained, it is "doubtful they could ever plausibly allege

[2] Moreover, to state a claim for equitable relief in federal court, Plaintiffs must allege "they lack an adequate remedy at law." *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *4 (N.D. Cal. July 1, 2024). The Complaint makes clear that Plaintiffs have adequate legal remedies.

such a claim" because Plaintiffs do not have a legally protected privacy interest in their IP addresses. *Id.* at 1191. Thus, Plaintiffs' unjust enrichment claim fails.

### E. Plaintiffs lack standing to bring an UCL claim because the UCL protects persons who have lost money or property, and Plaintiffs have not.

To state a claim under California's Unfair Competition Law (UCL), Bus. & Prof. Code § 17200, et seq., Plaintiffs "must show that they personally lost money or property 'as a result of the unfair competition.'" *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019). The collection, recording, or sharing of geolocation data or personal information does not constitute lost money or property for UCL standing purposes. *Id.* at 1040; *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011).

Plaintiffs have not alleged any lost money or property as a result of Nexstar's alleged conduct. Instead, Plaintiffs claim, in a conclusory fashion, that "they would not have used Defendant's website" if they were aware "their information would be collected and otherwise misused." Compl. ¶ 166. But, critically, Plaintiffs have not alleged that they paid Defendant any money to use the website. Nor have they alleged that their devices' IP addresses had any economic value to **them**. *See Bass*, 394 F. Supp. 3d at 1040 ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property."). Accordingly, Plaintiffs' UCL claim fails.

## V. CONCLUSION

Because Plaintiffs have failed to allege facts sufficient as a matter of law to support their claims against Nexstar, Nexstar respectfully requests that the Court dismiss all claims in the Complaint, with prejudice, and award it any costs and fees recoverable by law.

DATED: February 13, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: *\/s/ Brianna R. Howard*
Scott S. Humphreys
Brianna R. Howard

Attorneys for Defendant Nexstar Media Inc.