ERIC A. GROVER (SBN 136080)
eric.grover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rachael.jung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN, A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiffs*
Brian Carolus, Saber Khamooshi, and Ryan Wu

Timothy D. Cohelan, Esq. (SBN 60827)
tcohelan@ckslaw.com
Isam C. Khoury, Esq. (SBN 58759)
ikhoury@ckslaw.com
**COHELAN KHOURY & SINGER**
605 C Street, Suite 200
San Diego, California 92101
Telephone: (619) 595-3001
Facsimile: (619) 595-3000

Patrick N. Keegan, Esq. (SBN 167698)
pkeegan@keeganbaker.com
**KEEGAN & BAKER, LLP**
2292 Faraday Avenue, Suite 100
Carlsbad, California 92008
Telephone: (760) 929-9303
Facsimile: (760) 929-9260

*Attorneys for Plaintiff*
John Deddeh

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

BRIAN CAROLUS, SABER KHAMOOSHI, RYAN WU, and JOHN DEDDEH, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

NEXSTAR MEDIA INC.

Defendant.

Case No: 3:24-cv-07790-VC

Assigned for All Purposes to:
Hon. Vince Chhabria

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST CONSOLIDATED COMPLAINT FOR DAMAGES**

Date: April 3, 2025
Time: 10:00 a.m.
Courtroom: 4 – 17th Floor

Action Filed: October 8, 2024
Removed: November 7, 2024
Consolidated: January 23, 2025

# TABLE OF CONTENTS


Page

I. PRELIMINARY STATEMENT ........ 8

II. PLAINTIFFS HAVE PLEADED EACH OF THEIR CLAIMS SUFFICIENTLY ........ 8

A. Nexstar's Surreptitious Installation of Third-Party Tracker Cookies on Website Users' Browsers Violates the CDAFA. ........ 8

1. The CDAFA requires only knowing access and conduct undertaken without permission, not circumvention of technological barriers. ........ 8

2. Plaintiffs' CDAFA claims are not subject to Rule 9(b) pleading standards. ........ 11

3. Plaintiffs adequately allege economic harm sufficient to confer standing. ........ 11

B. Nexstar's Use of Pen Register Trackers on Its Website to Collect and Secretly Share IP Addresses and Other User Data with Undisclosed Third Parties Without User Consent or a Court Order Violates CIPA. ........ 12

1. Nexstar's conduct falls within the scope of Penal Code § 638.51 because pen registers capture outgoing information, including IP addresses. ........ 13

2. A reasonable expectation of privacy exists for IP addresses. ........ 16

C. Nexstar's Unauthorized Disclosure of Geographical Location Information without Consent Is Highly Offensive Conduct and a Serious Invasion of Privacy. ........ 18

D. Plaintiffs Are Entitled to Nexstar's Unjustly Earned Profits. ........ 20

E. Plaintiffs Have Standing to Bring Their UCL Claims. ........ 21

III. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Brown v. Google LLC*,
525 F.Supp.3d 1049 (N.D. Cal. 2021) .......... 9, 10

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 11, 21

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .......... 9, 11

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) .......... 20, 21

*Calhoun v. Google, LLC*,
2024 WL 3869446 (9th Cir. Aug. 20, 2024) .......... 9

*Campbell v. Facebook Inc.*,
77 F.Supp.3d 836 (N.D. Cal. 2014) .......... 9

*Capitol Records Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) .......... 15

*Cottle v. Plaid Inc.*,
536 F.Supp.3d 461 (N.D. Cal. 2021) .......... 11

*Cti III, LLC v. Devine*,
2022 U.S. Dist. LEXIS 94820 (E.D. Cal. May 25, 2022) .......... 10, 11

*DocMagic. Inc. v. Ellie Mae, Inc.*,
745 F.Supp.2d 1119 (N.D. Cal. 2010) .......... 10

*Doe v. Meta Platforms, Inc.*,
690 F.Supp.3d 1064 (N.D. Cal. 2023) .......... 13

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (C.D. Cal. Mar. 18, 2024) .......... 10

*Facebook, Inc. v. ConnectU LLC*,
489 F.Supp.2d 1087 (N.D. Cal. 2007) .......... 10

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) .......... 12

*Greenley v. Kochava, Inc.*,
684 F.Supp.3d 1024 (S.D. Cal. 2023) ..................... *passim*

*Heeger v. Facebook, Inc.*,
509 F.Supp.3d 1182 (N.D. Cal. 2020) ..................... 17, 19

*In re Anthem Inc. Data Breach Litig.*,
2016 WL 3029783 (N.D. Cal. May 17, 2016) ..................... 21

*In re Carrier IQ, Inc.*,
78 F.Supp.3d 1051 (N.D. Cal. 2015) ..................... 10, 12, 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..................... *passim*

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)..................... 18

*In re Facebook Internet Tracking Litigation,*
140 F.Supp.3d 922 (N.D. Cal. 2015)..................... 13

*In re Google Assistant Privacy Litig.*,
457 F.Supp.3d 797 (N.D. Cal. 2020) .....................9

*In re Google Referrer Header*,
465 F.Supp.3d 999 (N.D. Cal. 2020) ..................... 20

*In re Google RTB Consumer Privacy Litig.*,
606 F.Supp.3d 935 (N.D. Cal. 2022) ..................... 17, 19

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ..................... 21

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ..................... 14

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .....................9

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. 2022)..................... 9, 13

*Lesh v. Cable News Network, Inc.*,
2025 WL 563358 (S.D.N.Y. Feb. 20, 2025) ..................... 13, 16

*Lineberry v. AddShopper, Inc.*,
2025 WL 551864 (N.D. Cal. Feb. 19, 2025) ..................... 11

*Lopez v. Apple, Inc.*,
519 F.Supp.3d 672 (N.D. Cal. 2021) .......... 16

*Mastel v. Miniclip SA*,
549 F.Supp.3d 1129 (E.D. Cal. 2021) .......... 20

*Matera v. Google Inc.*,
2016 U.S. Dist. LEXIS 107918 (N.D. Cal. Aug. 12, 2016) .......... 13

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 9

*Mirmalek v. Los Angeles Times Communs. LLC*,
2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .......... 13, 16

*Moody v. C2 Educ. Systems, Inc.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024) .......... 13, 15, 18

*Opperman v. Path, Inc.*,
87 F.Supp.3d 1018 (N.D. Cal. 2014) .......... 20

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 18

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) .......... 12

*Rodriguez v. Google LLC*,
2025 U.S. Dist. LEXIS 3238 (N.D. Cal. Jan. 7, 2025) .......... 12

*Shah v. Fandom, Inc.*,
2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) .......... 13, 14, 15, 16

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .......... 16

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*,
489 U.S. 749 (1989) .......... 19

*U.S. v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 9

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 14, 17

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) .......... 14

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .................... 11

*West v. Ronquillo-Morgan*,
526 F.Supp.3d 737 (C.D. Cal. 2020) .................... 10

*Williams v. Facebook, Inc.*,
498 F.Supp.3d 1189 (N.D. Cal. 2019) .................... 12

**Federal Statutes**

Code of Federal Regulations, Title 45
§ 164.514 .................... 16

**State Cases**

*Apple Inc. v. Superior Court*,
56 Cal.4th 128 (2013) .................... 12

*California Federal Bank v. Matreyek*,
8 Cal.App.4th 125 (1992) .................... 20

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) .................... 13

*Heiting v. Taylor Fresh Foods, Inc.*,
2024 WL 3833296 (Cal. Super. Ct. L.A. Cty. July 31, 2024) .................... 15

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal.4th 95 (2006) .................... 16

*Kwikset Corp. v. Superior Court*,
51 Cal.4th 310 (2011) .................... 21

*Lectrodryer v. SeoulBank*,
77 Cal.App.4th 723 (2000) .................... 20

*Levings v. Choice Hotels Int'l, Inc.*,
2024 WL 1481189 (Cal. Super. Ct. L.A. Cty. April 3, 2024) .................... 16

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. March 13, 2024) .................... 15

*People v. Ault*,
33 Cal.4th 1250 (2004) .................... 17

**State Statutes**

California Business & Professions Code
§ 17200 .......... 8
§ 17204 .......... 21

California Civil Code
§ 1798.100 .......... 17
§ 1798.140 .......... 16, 17

California Constitution Article I,
§ 1 .......... 8, 16

California Penal Code
§ 502 .......... 8, 9, 11
§ 630 .......... 8
§ 638.50 .......... 13, 14
§ 638.51 .......... 13, 14, 17
§ 1546 .......... 16, 17

**Rules**

Federal Rules of Civil Procedure,
Rule 9 .......... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiffs' First Consolidated Complaint ("FCC") addresses Nexstar's unlawful practice of embedding and using various third-party trackers on its The Hill website, www.thehill.com ("the website").[1] Without users' knowledge or consent, Nexstar (1) installs and stores third-party tracker cookies on its website users' browsers and (2) initiates and causes disclosure of website users' personal data, including IP addresses, to those third-party trackers. Nexstar attempts to escape liability by (1) imposing requirements not present in the CDAFA, (2) misconstruing the pen register statute's scope, (3) mischaracterizing and ignoring the important privacy rights at stake, (4) hiding its unlawful actions under the guise of necessity, and (5) minimizing Plaintiffs' harm and loss. Plaintiffs have pleaded their privacy claims and actionable injuries properly.

## II. PLAINTIFFS HAVE PLEADED EACH OF THEIR CLAIMS SUFFICIENTLY

### A. Nexstar's Surreptitious Installation of Third-Party Tracker Cookies on Website Users' Browsers Violates the CDAFA.

The CDAFA was enacted with the intent to "expand the degree of protection afforded to individuals…from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a) The Legislature declared that "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals." *Id.*

#### 1. The CDAFA requires only knowing access and conduct undertaken without permission, not circumvention of technological barriers.

Nexstar argues that it did not violate the CDAFA because it did not circumvent technological barriers to access website users' computer systems. Nexstar's argument fails for multiple reasons. First, liability under § 502(c) turns on an analysis of the specific "acts" alleged

[1] The FCC alleges five causes of action for violations of (1) the California Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"); (2) the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"); (3) the right to privacy under Article 1, § 1, of the California Constitution; (4) unjust enrichment; and (5) the Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL"). (ECF 15.)

and whether there was "permission" to engage in those acts. *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485 at *5 (N.D. Cal. Feb. 20, 2024). As the Ninth Circuit noted, the statute does not require unauthorized access to information, only the unauthorized taking and using of such information. *U.S. v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015); *see also McClung v. AddShopper, Inc*., 2024 WL 189006, at *4 (N.D. Cal. Jan. 17, 2024).

Further, Nexstar has the burden of proving a consent defense. *Calhoun v. Google, LLC*, 2024 WL 3869446, at *5 (9th Cir. Aug. 20, 2024); *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1063 (N.D. Cal. 2021). Plaintiffs could not have consented to the third-party trackers on their web browsers because they were unaware that Nexstar had embedded those trackers. FCC, ¶¶ 77-78; *see McClung*, 2024 WL 189006 at *3, citing *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 at *2 (9th Cir. 2022) [unpublished]. Further, Nexstar's Privacy Policy is buried at the bottom of the webpage. It is seen, if at all, only after scrolling through all the content and long after the third-party trackers have been installed. No authorization or consent is requested. FCC, ¶ 77, 79-80.

That lack of notice defeats any claim that Plaintiffs gave permission to Nexstar to access their computers, install third-party trackers, and allow those undisclosed third parties to collect their personal information. Moreover, consent is "generally limited to the specific conduct authorized." *Greenley v. Kochava, Inc.,* 684 F.Supp.3d 1024, 1048 (S.D. Cal. 2023), quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319 at *2 (N.D. Cal. Mar. 9, 2021). *See also Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 847 (N.D. Cal. 2014) (no consent to data being used for advertising where users consented to use for "data analytics"); *In re Google Assistant Privacy Litig*., 457 F.Supp.3d 797, 824 (N.D. Cal. 2020) (***consent to data collection does not extend to data disclosure***).

Second, the plain language of the statute does not suggest "circumvention of technological barriers" as a requirement. The statute defines "access" to mean "gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with…" Penal Code § 502(b)(1). The subsections also do not use such "circumvention" language and instead state only "***knowingly accesses and without permission***." Penal Code §§ 502(c)(1)-(7). Case law is in accord and establishes that Plaintiffs need not allege that Nexstar circumvented technological barriers. *See*

*Kochava*, 684 F.Supp.3d at 1049 (the "plain meaning of 'without permission' does not require the circumvention of computer barriers" and thus even "code hidden in embedded software may plausibly use or take computer data 'without permission'"); *West v. Ronquillo-Morgan*, 526 F.Supp.3d 737, 746 (C.D. Cal. 2020) ("[c]ircumventing technical barriers may be sufficient to show that a person acted 'without permission,' ***but that does not mean it is necessary for a person to circumvent technical barriers to act 'without permission'***").

Nor is bypassing barriers the only way to prove that Nexstar acted "without permission." *See In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1099-1100 (N.D. Cal. 2015) (hidden software that transmitted data without notice and without providing a way to opt out of its functionality was sufficient for a CDAFA claim). *See also DocMagic. Inc. v. Ellie Mae, Inc.*, 745 F.Supp.2d 1119, 1151 (N.D. Cal. 2010) (use of a third-party's log-in credentials, even with the third parties' consent, to access servers and remove information was sufficient to state a CDAFA claim), citing *Facebook, Inc. v. ConnectU LLC*, 489 F.Supp.2d 1087, 1091 (N.D. Cal. 2007); *Cti III, LLC v. Devine*, 2022 U.S. Dist. LEXIS 94820, at *12 (E.D. Cal. May 25, 2022) (logging into a database with a valid password and then improperly taking, copying or using the information violates the CDAFA).

Courts also have found that ***hidden code***, like the trackers embedded on Nexstar's website, used to access individuals' computers and track their activity, is sufficient to violate the CDAFA. *In re Carrier IQ*, 78 F.Supp.3d at 1101; *Brown*, 525 F.Supp.3d at 1075. *See also Esparza v. Kohl's, Inc.*, 2024 WL 1152732 at * 7-8 (C.D. Cal. Mar. 18, 2024) (denying MTD where CDAFA claim predicated on website's tracking cookie accessing plaintiff's IP address to de-anonymize and extract plaintiff's personal information).

Further, the FCC alleges that each of the third-party trackers embedded on Nexstar's website automatically and without permission re-installs its tracker cookies every time a user visits the website. FCC, ¶¶ 64, 76. That persistent reinstallation, even when users previously cleared the cookies from their browsers, is sufficient to demonstrate "overcoming barriers" and circumventing users' choices. *See Brown*, 525 F.Supp.3d at 1075 (finding that plaintiffs stated a CDAFA claim where defendant's technology "would render ineffective any barrier that plaintiffs implemented").

**2. Plaintiffs' CDAFA claims are not subject to Rule 9(b) pleading standards.**

Nexstar next argues that Plaintiffs' CDAFA claims are subject to heightened pleading standards. "Under California law, the 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). No such allegations are present ***or needed*** in the FCC because fraud is not an element of a CDAFA claim. *See, e.g., Kochava,* 684 F.Supp.3d at 1047-1049 (analyzing CDAFA claims under plausibility standard); *Cti III, LLC*, 2022 U.S. Dist. LEXIS 94820 at *9-13 (same); *Bui-Ford*, 2024 U.S. Dist. LEXIS 28767 at *12-16 (same). Unlike similar statutes which require "intent to defraud," the CDAFA uses the terms "knowingly accesses and without permission." *See generally* Pen. Code § 502(c). "Where fraud is not an essential element of a claim, only allegations…of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)," while "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards"). *Vess*, 317 F.3d at 1104-1105.

**3. Plaintiffs adequately allege economic harm sufficient to confer standing.**

Nexstar's argument that Plaintiffs have failed to plead the harm required by Penal Code § 502 ignores Plaintiffs' allegations of damage and loss caused by Nexstar's unauthorized installation of third-party trackers on website users' browsers, resulting in (1) the misappropriation of website users' data that carries financial value and (2) the consumption of additional device and energy resources and related increased costs to users. FCC, ¶¶ 127-129.

The CDAFA neither defines nor sets a monetary threshold for "damage or loss." *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461, 487 (N.D. Cal. 2021). Rather, under the plain language of the statute, any amount of damage or loss due to a CDAFA violation is cognizable. *See* Penal Code § 502(e)(1); *Lineberry v. AddShopper, Inc.*, 2025 WL 551864 at *2 (N.D. Cal. Feb. 19, 2025). Thus, Plaintiffs may allege damage or loss from the misappropriation of their data, so long as they articulate that theory of loss in a concrete way. *Id. See also Brown v. Google LLC*, 685 F. Supp. 3d at 939-940, citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020)

("*Facebook Tracking*") (plaintiffs sufficiently alleged their browsing histories had financial value and could state an economic injury for their misappropriated data).

Here, Plaintiffs allege that by "installing trackers and their corresponding tracking cookies" and "by collecting and disclosing its users' information," Nexstar was able to monetize website users' personal information, including IP addresses, and sell advertising space on its website and earn additional revenue. FCC ¶¶ 30, 59-60. The FCC further alleges that Plaintiffs and Class members suffered economic harm, i.e. damage or loss, because Nexstar took their valuable data without permission, failed to pay for that collected data despite there being a market for it, and then exploited that personal data for profit. FCC ¶¶ 30-31, 40, 59-60, 61-76, 127. *See Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *3 (N.D. Cal. Sept. 23, 2024) (evidence that misappropriated information carried financial value sufficient to establish CDAFA damages); *Rodriguez v. Google LLC*, 2024 WL 38302, at *6 (N.D. Cal. Jan. 3, 2024) (certifying CDAFA class based on evidence of data's financial value and defendants' profits). *See also Rodriguez v. Google LLC*, 2025 U.S. Dist. LEXIS 3238 at *34 (N.D. Cal. Jan. 7, 2025) (denying MSJ because "a reasonable juror could find that Plaintiffs suffered damage or loss because Google profited from the misappropriation of their data").

Further, Plaintiffs allege that the unauthorized installation of and access by the third party trackers consumed additional energy resources and depleted their battery and bandwidth, causing economic damage or loss. FCC ¶ 129. Courts have recognized depletion of battery and computing resources as acceptable forms of damage or loss for purposes of a CDAFA claim. *In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1065; *Williams v. Facebook, Inc.*, 498 F.Supp.3d 1189, 1199 (N.D. Cal. 2019). Plaintiffs' allegations are sufficient to confer standing to state a CDAFA claim.

### B. Nexstar's Use of Pen Register Trackers on Its Website to Collect and Secretly Share IP Addresses and Other User Data with Undisclosed Third Parties Without User Consent or a Court Order Violates CIPA.

The California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme. *See Apple Inc. v. Superior Court*, 56 Cal.4th 128, 137 (2013). In the CIPA context, the California Supreme Court repeatedly has found

that the California Legislature intended CIPA to establish strong privacy protections and has instructed other courts to interpret CIPA in a manner that "fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests." *Flanagan v. Flanagan*, 27 Cal.4th 766, 775 (2002). Numerous district courts have applied CIPA to new technologies. *Matera v. Google Inc.*, 2016 U.S. Dist. LEXIS 107918 at *61, 67 (N.D. Cal. Aug. 12, 2016) (applying CIPA to emails); *Facebook Tracking*, 140 F.Supp.3d at 936 (CIPA applies to "electronic communications").

The Ninth Circuit and other district courts, including this Court, have determined that CIPA applies to internet communications and have applied CIPA to computer-based internet wiretapping, including the pen register statute. *See Assurance IQ, LLC*, 2022 WL 1744107, at *1 (CIPA applies to internet communications); *Kochava, Inc.*, 684 F.Supp.3d at 1050 (tracking software was a "pen register"); *Moody v. C2 Educ. Systems, Inc.*, 2024 WL 3561367 at *2-3 (C.D. Cal. July 25, 2024) (software embedded on the website falls within the scope of §§ 638.50 and 638.51); *Shah v. Fandom, Inc.*, 2024 U.S. Dis. LEXIS 193032, at *13 (N.D. Cal. Oct. 21, 2024) (tracking software could plausible constitute a pen register).

**1. Nexstar's conduct falls within the scope of Penal Code § 638.51 because pen registers capture outgoing information, including IP addresses.**

In erroneously claiming that pen registers collect only "incoming or outgoing telephone numbers or their modern analog," Nexstar misinterprets what a "pen register" captures. First, pen registers are not limited to devices installed on a telephone. The definitions under Penal Code § 638.50 have no such requirement or limitation. Rather, they simply refer to "a device ***or process***" that records or captures certain information from a "wire or electronic communication." Pen. Code §§ 638.50(b)-(c) (emphasis added). Many courts have recognized that software qualifies as a "device" under CIPA. *See Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1080 (N.D. Cal. 2023); *In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1084.

Many recent decisions have confirmed that tracking software can constitute a "pen register" under §§ 638.50 and 683.51. *See Kochava*, 684 F.Supp.3d at 1050; *Moody*, 2024 WL 3561367, at *2-3; *Fandom*, 2024 U.S. Dist. LEXIS 193032, at *6 and *13 (***trackers operate as a "process" that records IP addressing information and can plausibly constitute a pen register);*** *Mirmalek v. Los*

*Angeles Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *6-10 (N.D. Cal. Dec. 12, 2024) (trackers are a "device or process" under § 638.50 and record addressing information in the form of IP addresses as required by CIPA); *Lesh v. Cable News Network, Inc.*, 2025 WL 563358, at *3-5 (S.D.N.Y. Feb. 20, 2025) (trackers are "pen registers" under § 638.51 and finding that "the plain text of Section 638.50 clearly does not limit the application of pen registers to telephones").

Second, a "pen register" is a "device or process" that records ***outgoing*** information from the source of a communication. The "pen register" definition provides for the recording of information "transmitted ***by*** an instrument or facility ***from*** which a wire or electronic communication is transmitted." Pen. Code § 638.50(b) (emphasis added). For a pen register, the focus is on the ***outgoing*** direction of the information from the source, as contrasted with a "trap and trace device" that records ***incoming*** information. Pen. Code § 638.50(c). Here, the relevant information is ***outbound*** information from website users' browsers, including browser and device data and IP addresses, sent to Nexstar's website ***and also sent surreptitiously to and recorded by the third-party trackers*** used by Nexstar.

Third, the statute specifies that a pen register captures "dialing, routing, addressing or signaling information." There is no limitation indicating that the information relates only to telephone numbers or only to the destination, versus the source, as Nexstar claims. *See Fandom*, 2024 U.S. Dist. LEXIS 193032, at *9-10 ("By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element"). Moreover, even if Nexstar's interpretation was correct, that simply would mean that the third-party trackers are "trap and trace" devices because they collect "electronic or other impulses that identify the ***originating number*** or other dialing, routing, ***addressing***, or signaling information reasonably likely to identify the source of a wire or electronic communication." Pen. Code § 638.50(c).[2]

Further, IP addresses constitute ***addressing information*** and do not necessarily reveal any more about the underlying contents of the communication. *See Fandom*, 2024 U.S. Dist. LEXIS

---

[2] Pen registers and trap-and-trace devices almost always are used together. Thus, courts generally discuss them as one. *See, e.g., United States v. Soybel*, 13 F.4th 584, 586 n. 2 (7th Cir. 2021).

193032, at *6-8 (finding trackers record addressing information), citing *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). Even the *Forrester* case cited by Nexstar supports this characterization. *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (holding that "email to/from addresses and IP addresses constitute addressing information"). The FCC alleges the unauthorized collection and use of IP addresses, *i.e.* addressing information, sent from Plaintiffs and Class members who visited Nexstar's website.

Nexstar tries to bolster its position by asserting that its conduct is a part of basic internet functionality. ***But this case does not involve information conveyed to a first-party website operator. Rather, it involves personal information sent to third parties without notice or consent.*** Nexstar's surreptitious disclosure to third-parties Media.net, Index Exchange, and Xandr is not "necessary" to the function, operation or maintenance of the Nexstar website. *See Fandom*, 2024 U.S. Dist. LEXIS 193032, at *14-15 ("A user who consents to disclose their IP address [ ] as part of accessing [a] website does not necessarily consent to disclose their IP address to the third parties operating the Trackers"). Nexstar cannot hide behind the guise of necessity.

Further, Nexstar's reliance on *Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Super. March 13, 2024), is misplaced. There, the plaintiff did not allege that the defendant installed a pen register that disclosed plaintiff's information *to a third party.* Rather, that case involved sending information to the website operator defendant. The court reasoned that there was "consent under the guise of visiting a website" because the defendant could not otherwise host a website. *Id*. at *4. Nexstar's reliance on *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) fails for the same reason. That case involved transmission of information ***to a party*** to a communication, ***not to third parties***. These cases have no bearing on the present case.

Here, the unauthorized conduct is Nexstar's disclosure of Plaintiffs' and Class members' personal information ***to third parties.*** With similar allegations – hidden code installed by a defendant allowing for the collection and use of user information for marketing, advertising, or data analytics purposes – *Kochava* is analogous. In finding that "courts should focus less on the form of the data collector and more on the results," the court held that "[a] process can take many forms.

Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Kochava*, 684 F.Supp.3d at 1050. Other courts agree. *See Moody*, 2024 WL 3561367, at *2-4; *Heiting v. Taylor Fresh Foods, Inc.*, 2024 WL 3833296, at *3 (Cal. Super. Ct. L.A. Cty. July 31, 2024); *Levings v. Choice Hotels Int'l, Inc.*, 2024 WL 1481189, at *1-2 (Cal. Super. Ct. L.A. Cty. April 3, 2024); *Fandom*, 2024 U.S. Dis. LEXIS 193032, at *6; *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *6-10; *Lesh*, 2025 WL 563358, at *3-5.

**2. A reasonable expectation of privacy exists for IP addresses.**

Nexstar argues that Plaintiffs lack standing because there is no privacy interest in a device's IP address. That is false. An IP address is private information, and disclosure of private information has long been recognized as one of the traditional harms giving rise to standing. *See, e.g., TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (recognizing that "various intangible harms can also be concrete [including]…disclosure of private information"); *Lopez v. Apple, Inc.*, 519 F.Supp.3d 672, 681 (N.D. Cal. 2021) (a violation of substantive privacy rights "gives rise to a concrete injury sufficient to confer standing"), quoting *Facebook Tracking*, 956 F.3d at 598.

In *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95 (2006), the California Supreme Court held that "California's explicit constitutional privacy provision (Cal. Const., Art. I, § 1) was enacted in part specifically to ***protect Californians from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy***." *Id*. at 124-125 (emphasis added). That privacy right also extends to IP addresses. *Fandom*, 2024 U.S. Dist. LEXIS 193032, at *17 (recognizing that the statute "reflects the Legislature's judgment that an individual's consent is required before others may track certain addressing information in their electronic communications for non-law enforcement purposes").

Multiple California and federal laws recognize that IP addresses constitute personal information, and thus provide consumers with a privacy interest in that information. *See e.g.*, 45 C.F.R. § 164.514(b)(2)(i)(O) (IP address is a personal identifier subject to HIPAA protection); Cal. Civ. Code § 1798.140(v)(1)(A) ("[i]dentifiers such as a[n] [IP] address" constitute a consumer's personal information); Cal. Pen. Code §§ 1546(d) and (h), 1546.1(a)(1) and (b) (precluding the

government from compelling ISPs to provide a user's IP address without a warrant). That is because IP addresses can be used to determine a user's geographical location, gather insights about a user's online behavior and activity, deliver targeted advertisements, and enable hackers to launch cyberattacks and scams. *See* Danao, Monique, *What Can Someone Do With Your IP Address?*, Forbes Advisor, https://www.forbes.com/advisor/business/what-can-someone-do-with-ip-address/

Recent laws enacted in California have recognized the personal nature of and have protected IP addresses. For example, the California Electronic Communications Privacy Act ("CECPA"), Penal Code § 1546, *et seq.*, precludes the government from compelling ISPs to disclose a user's IP address without a warrant. The California Consumer of Privacy Act ("CCPA), Cal. Civ. Code § 1798.100, *et seq.*, protects and defines "personal information" to include "[g]eolocation data," "internet protocol addresses," or "unique personal identifiers [or] online identifiers." Civ. Code § 1798.140(v)(1)(A). Individuals maintain a reasonable expectation of privacy in their personal information. *See In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d 935, 946-947 (N.D. Cal. 2022) (defendant's selling and sharing of "sensitive personal information ***such as plaintiff's IP address***" without consent supported a reasonable expectation of privacy).

Nexstar's cited authorities are inapposite. *Forrester* pre-dates California's laws, and only analyzed the "**IP addresses *of websites visited***" and what constitutes a "search" under the Fourth Amendment. *Forrester*, 512 F.3d at 510. *Forrester* did not consider whether a user has a reasonable expectation of privacy as to the ***user's*** IP address. *Heeger v. Facebook, Inc.*, 509 F.Supp.3d 1182 (N.D. Cal. 2020), also is unavailing. The *Heeger* plaintiffs did not bring a claim under § 638.51, so the court did not conduct any analysis of the viability of such a claim. That court also failed to address the CECPA or CCPA and thus failed to consider the Legislature's enactment into California law that IP addresses are personal information subject to protection. *People v. Ault*, 33 Cal.4th 1250, 1268 n. 10 (2004) (it is "axiomatic that cases are not authority for propositions not considered").

Nexstar also suggests that CIPA does not apply because the trackers only collect IP addresses, which is necessary for the operation of the internet. But Plaintiffs allege that the tracking technology collects more than IP addresses, and also collects operating system information, browser

information, and geolocation data for use by Nexstar and third parties. Nexstar does not argue that the collection of that additional data is necessary to operate or maintain its website. Nor does Nexstar argue that the collection of ***any data by a third party*** is necessary.

Plaintiffs allege that: (1) Nexstar operates its website with third-party trackers embedded on the website; (2) installs third-party tracker cookies on website users' browsers without obtaining users' authorization; (3) the third-party trackers surreptitiously collect data from every website visitor without consent; and (4) Plaintiffs visited Nexstar's website during the relevant period. These allegations demonstrate that Nexstar, through the unauthorized installation of the third-party trackers, ***discloses its website users' personal information to third parties without permission.*** That invades Plaintiffs' and Class members' privacy and constitutes actionable injuries. *See Moody*, 2024 WL 3561367, at *6, citing *Facebook Tracking*, 956 F.3d at 598.

### C. Nexstar's Unauthorized Disclosure of Geographical Location Information without Consent Is Highly Offensive Conduct and a Serious Invasion of Privacy.

Plaintiffs properly have pleaded the required elements to state a Constitutional privacy claim. *See* FCC ¶¶ 147 (protected privacy interest), 148 (reasonable expectation of privacy), and 150 (serious invasion of privacy). Nexstar's arguments to the contrary are based again on the false premise that individuals do not have a protected interest in their IP addresses and so their disclosure would not amount to an egregious breach of social norms. Nexstar's arguments fail.

First, Nexstar again mischaracterizes the unauthorized disclosure of personal information ***to third parties*** as information conveyed to first-party website operators. But transmitting information to Nexstar's website itself is not the issue. Moreover, in addition to IP addresses, the FCC also alleges that Nexstar surreptitiously allows third-party trackers to collect website users' browser and device data as well as their personally identifying and addressing information that revealed their identity and browsing habits. *See* FCC, ¶¶ 1, 6, 8, 59-76, 147-150. A jury could conclude that this intrusion is a highly offensive breach of norms. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019); *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 2019 WL 4261048, at *17.

Nexstar next attempts to impose a heightened pleading standard by erroneously requiring Plaintiffs to prove their allegations at this early stage. It asserts that Plaintiffs only allege "what information the trackers are capable of collecting and what they could theoretically do with such information," not what they actually collected about Plaintiffs. But at the pleading stage, a plaintiff need only plausibly allege facts demonstrating that a defendant is liable for the complained of conduct. To ask a plaintiff to plead with great particularity, before discovery, exactly what information a third-party software company collected and is capable of doing with the data gathered sets the pleading bar too high. That information is more likely to be learned in discovery.

Further, the FCC contains detailed allegations – including snapshot images of the tracking process undertaken by the three trackers embedded in Nexstar's website – regarding the improper collection and use of website users' browser and device data and addressing information for marketing, advertising, and other analytics purposes by those third parties. These allegations are sufficient to plausibly demonstrate a violation of Plaintiffs' privacy interests.

Second, individuals *do* have a reasonable expectation of privacy in their IP addresses and other identifying data. As noted above, *Heeger* failed to consider California statutes protecting consumers' IP addresses as personal information. Courts also have found that a defendant's selling and sharing of "sensitive personal information ***such as plaintiff's IP address***" without consent violates a reasonable expectation of privacy. *See, e.g., In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d at 946-947 (an IP address "is personal information under California law" and generally is expected to remain private).

The FCC also alleges much more than "generalized location" data and asserts that "an IP address contains geographical location information from which the state, city, and zip code of a specific device can be determined." FCC ¶ 55. The FCC also alleges that an IP address "allows advertisers to target specific households, businesses, and even individuals." FCC ¶ 56. Services can use databases to map IP addresses to physical locations in geographic areas, and can provide information about the country, city, and approximate latitude and longitude coordinates of a device.

The Supreme Court and the Ninth Circuit have recognized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 763-764 (1989). Tellingly, ***Nexstar ignores the controlling Facebook Tracking opinion***, which held that plaintiffs had stated a claim for invasion of privacy when the defendant tracked and collected consumers' personal information without notice or consent. *Facebook Tracking,* 956 F.3d at 599. Moreover, "information need not be personally identifying to be private." *In re Google Referrer Header*, 465 F.Supp.3d 999, 1009-10 (N.D. Cal. 2020).

Nexstar implies that its conduct is part of a routine automatic process that is not a serious privacy invasion. But Nexstar's unauthorized installation of third-party trackers and its disclosure of its website users' personal information to undisclosed third parties, all without consent, is neither necessary nor routine. *See Calhoun v. Google LLC*, 526 F.Supp.3d 605, 631 (N.D. Cal. 2021) (surreptitious collection of data in contravention of representations to users is highly offensive); *Opperman v. Path, Inc.*, 87 F.Supp.3d 1018, 1061 (N.D. Cal. 2014) (interception of personal contact lists ***without consent*** sufficient to pass challenges to the "highly offensive" element on a MTD).

Further, questions of whether conduct violates social norms "tend by their very nature to be subjective" and "these questions are typically more appropriately resolved by a jury." *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1139 (E.D. Cal. 2021). The Ninth Circuit has held that "the ultimate question of whether tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *Facebook Tracking*, 956 F.3d at 606. Nexstar's arguments are premature and should be rejected.

### D. Plaintiffs Are Entitled to Nexstar's Unjustly Earned Profits.

Under California law, an individual is required to make restitution if that individual is unjustly enriched at the expense of another. *California Federal Bank v. Matreyek*, 8 Cal.App.4th 125, 131 (1992). Courts have recognized an independent cause of action for unjust enrichment. *See Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000). As noted by the Ninth Circuit, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even

where an individual has not suffered a corresponding loss." *Facebook Tracking*, 956 F.3d at 599. Here, the FCC alleges that Nexstar was unjustly enriched "by accessing, acquiring, taking, and using Plaintiffs' and Class members' data" without their permission or consent "for Defendant's own financial benefit." FCC ¶ 128. Under California law, a "stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *Facebook Tracking*, 956 F.3d at 600.

As detailed above, and as evidenced by the CCPA and CECPA, Plaintiffs do have a stake and legally protected privacy interest in their IP addresses, geolocation data, and online identifiers, all of which constitute protected personal information. Plaintiffs also have alleged that such information carries financial value and that a market exists for that personal data, including for IP targeted advertising and geomarketing. Nexstar has received monetary compensation from the third-party trackers surreptitiously collecting and using Plaintiffs' and Class members' personal information. Plaintiffs are entitled to those unjustly earned profits.

**E. Plaintiffs Have Standing to Bring Their UCL Claims.**

Nexstar incorrectly argues that Plaintiffs lack standing to bring a UCL claim because they have not personally lost money or property. Under the UCL, plaintiffs must show that they have "suffered injury in fact" and have "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. The California Supreme Court has held that "there are innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011). For example, a plaintiff may "have a present or future property interest diminished." *Id.* at 323.

Several district courts have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing. *See Calhoun*, 526 F. Supp. 3d at 636; *Brown,* 685 F. Supp. 3d at 942; *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (plaintiffs adequately alleged injury in fact based on the loss of value of their personal information); *In re Anthem Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (approving allegations of damage from the loss of value of personal

information). Here, Plaintiffs seek restitution under the UCL because Nexstar took their valuable data without permission and then exploited it for profit. FCC ¶¶ 30-31, 59-60, 61-76, 168. The FCC further alleges that Nexstar's unauthorized collection, disclosure and misuse of Plaintiffs' and Class members' personal information diminished their property interest and took property from them without providing just compensation. FCC, ¶¶ 163-164,167. Nexstar's misappropriation of private information is sufficient to state a UCL claim.

## III. CONCLUSION

Plaintiffs have properly asserted individual and putative class privacy claims under the CDAFA, the CIPA, the California Constitution, and the UCL. Plaintiffs request that the Court deny Nexstar's motion to dismiss in its entirety. If the Court is inclined to grant any part of the motion, Plaintiffs request leave to amend any perceived defects.

Respectfully submitted,

Dated: February 27, 2025

**KELLER GROVER LLP**

By: /s/ *Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*
Brian Carolus, Saber Khamooshi, and Ryan Wu

**COHELAN KHOURY & SINGER**

By: /s/ *Isam C. Khoury*
Isam C. Khoury, Esq.
*Attorneys for Plaintiff*
John Deddeh

**KEEGAN & BAKER, LLP**

By: /s/ *Patrick N. Keegan*
Patrick N. Keegan, Esq.
*Attorneys for Plaintiff*
John Deddeh

## CIVIL LOCAL RULE 5-1(i)(3) ATTESTATION

Pursuant to L.R.5-1, the filer of this document, Eric Grover, hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated: February 27, 2025 **KELLER GROVER LLP**

By: /s/ *Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*
Brian Carolus, Saber Khamooshi, and Ryan Wu