Scott S. Humphreys (SBN 298021)
humphreyss@ballardspahr.com
Brianna R. Howard (SBN 314642)
howardbr@ballardspahr.com
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4333
Fax: 424.204.4350

J. Matthew Thornton (pro hac application pending)
thorntonj@ballardspahr.com
BALLARD SPAHR LLP
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2110
Telephone: 612.371.6207

*Attorneys for Defendant*
*Nexstar Media Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**BRIAN CAROLUS, SABER KHAMOOSHI, RYAN WU, and JOHN DEDDEH, individually and on behalf of a class of similarly situated individuals,**

**Plaintiffs,**

**v.**

**NEXSTAR MEDIA INC.,**

**Defendant.**

Case No. 3:24-cv-7790-VC

(Removed from San Francisco Superior Court, Case No. CGC-24-618799)

**DEFENDANT NEXSTAR MEDIA INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST CONSOLIDATED COMPLAINT FOR DAMAGES**

**Hearing**:

| | |
|---|---|
| Judge: | Hon. Vince Chhabria |
| Dept.: | Courtroom 4, 17th Floor |
| Date: | April 3, 2025 |
| Time: | 10:00 a.m. |

# TABLE OF CONTENTS


I. Preliminary Statement ........................................ 1

II. Plaintiffs Have Not Alleged Facts Sufficient To Support Their CDAFA Claim.............. 2

A. CDAFA was enacted to prevent hacking, not the use of tracker cookies. ................ 2

B. Plaintiffs have not suffered any cognizable form of "damage" or "loss." ................ 4

III. Plaintiffs' Allegations Do Not Give Rise To A Viable Claim Under CIPA. ........................ 5

A. Plaintiffs have not alleged that Nexstar used a "pen register" device. ...................... 5

B. Collection and disclosure of IP addresses does not give rise to a cognizable injury. ........................................ 6

IV. Plaintiffs' Allegations Do Not Give Rise To A Viable Invasion of Privacy Claim. ............ 7

A. None of the cases on which Plaintiffs rely hold that a privacy interest or reasonable expectation of privacy exists in this context. ........................................ 7

B. Using cookies to collect device information does not constitute a serious invasion of privacy. ........................................ 7

V. Plaintiffs' Allegations Do Not Give Rise To A Viable Unjust Enrichment Claim. .............. 8

VI. Plaintiffs Do Not Have Standing To Bring A UCL Claim. ........................................ 8

VII. Conclusion ........................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................8

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................9

*Bui-Ford v. Tesla, Inc.*,
No. 4:23-cv-02321, 2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ....................2, 3

*Calhoun v. Google*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................8, 9

*Chevron Corp. v. Donziger*,
No. 1:12-MC-65, 2013 WL 3228753 (N.D.N.Y. June 25, 2013) ....................2

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................4

*DocMagic, Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010) ....................1, 3

*Doe I v. Google LLC*,
No. 23-CV-02431-VC, 2024 WL 3490744 (N.D. Cal. July 22, 2024) ....................2

*Facebook, Inc. v. ConnectU LLC*,
489 F. Supp. 2d 1087 (N.D. Cal. 2007) ....................4

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................3, 4, 7

*In re Anthem Inc. Data Breach Litig.*,
No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 17, 2016) ....................1, 9

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015). ....................4, 5

*In re Facebook Priv. Litigation*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F.App'x 494 (9th Cir. 2014) ....................9

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-MD-02752, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ....................................1, 9

*Javier v. Assurance IQ*,
No. 21-16351, 2022 WL 1744107 (9th Cir. 2022) ..................................................................6

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ......................................................................................9

*Lineberry, et al. v. AddShopper, Inc., et al.*,
No. 23-cv-01996-VC, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025) ...................................4, 5

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .....................................................................................7

*McClung v. AddShopper, Inc.*
No. 23-cv-01996-VC, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024).............................2, 3, 7, 8

*Moody v. C2 Educ. Sys., Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .....................................................................................7

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) .......................................................................................3

*Rodriguez v. Fountain9, Inc.*,
2024 WL 3886811 (Cal. Super. Ct. July 9, 2024) ....................................................................6

*United States v. Acevedo-Lemus*,
No. 15-00137-CJC, 2016 WL 4208436 (C.D. Cal. Aug. 8, 2016), *aff'd*, 800 F.
App'x 571 (9th Cir. 2020) .....................................................................................................2, 7

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) .....................................................................................5

**Statutes**

Federal Rule of Civil Procedure 9(b)..........................................................................................2

Cal. Pen. Code § 638.51(a) ..........................................................................................................6

Cal. Pen. Code § 638.52...............................................................................................................6

California Data Access and Fraud Act, Cal. Penal Code § 502..................................................2–5

California Unfair Competition Law, Bus. & Prof. Code § 17200, et seq. ................................9, 10

## I. Preliminary Statement

In opposition to Nexstar's motion to dismiss ("Motion"),[1] Plaintiffs rely heavily on cases involving the collection of, among other categories of highly personal information, detailed health data and social security numbers (as in *In re Anthem Inc.*), usernames, passwords, and cell phone numbers (as in *In re Yahoo!*), and login credentials (as in *DocMagic*). This case is not like any of those cases. Here, Plaintiffs allege only that third-party "tracker cookies" on Nexstar's website collected device-level information including, specifically, IP addresses—information that is transmitted any time an Internet user types a URL into a web browser, hits enter, and expects to see a corresponding webpage. Notably absent from the Complaint are allegations that those cookies also collected personal or sensitive information **about Plaintiffs**.

Nothing under the law prohibits a website operator from collecting or sharing IP addresses it receives from website visitors, directly or through the implementation of tracker cookies, as long as that data is not paired with personally identifying information capable of being correlated with a specific person. Plaintiffs' expansive interpretation of the law to the contrary lacks legal backing and, if adopted, would materially lower the bar for plaintiffs seeking to bring putative class action lawsuits against any company that runs a website with third-party cookies—i.e., most websites. The Court should reject Plaintiffs' interpretation, preserve the long history of limiting privacy claims to those involving the unauthorized disclosure of private personal information, and dismiss Plaintiffs' claims with prejudice.

[1] Unless otherwise indicated, capitalized terms will carry the same definitions given in Nexstar's Motion.

## II. Plaintiffs Have Not Alleged Facts Sufficient To Support Their CDAFA Claim.[2]

### A. CDAFA was enacted to prevent hacking, not the use of tracker cookies.

Plaintiffs do not meaningfully dispute that, at its core, CDAFA is an anti-hacking statute. *See* Mot. at 3. Yet, in their Opposition, they advocate for an interpretation of CDAFA that encompasses hacking **and much more**, including the collection of IP addresses, which, unlike the types of personal information that have historically given rise to privacy-based claims, are assigned to networks or devices—not specific individuals—and enable the Internet to function. *See, e.g.*, *Chevron Corp. v. Donziger*, No. 1:12-MC-65, 2013 WL 3228753, at *2 (N.D.N.Y. June 25, 2013) ("Every computer on the Internet needs to have an IP address in order to communicate with other computers on the Internet" (internal citation omitted)); *United States v. Acevedo-Lemus*, No. 15-00137-CJC, 2016 WL 4208436, at *5 (C.D. Cal. Aug. 8, 2016), *aff'd*, 800 F. App'x 571 (9th Cir. 2020) (noting that an "IP address is not a private physical feature of a computer, but a commonly disclosed digital one").

Most courts interpreting CDAFA have construed it narrowly—as is proper, given its inclusion in California's penal code. *See* Mot. at 3. Those courts have required plaintiffs to allege, at a minimum, that the defendant made unauthorized access to plaintiffs' computer systems or circumvented barriers that were put in place to prevent such access. *See id.* at 3–4. Plaintiffs do not dispute that, here, they failed to allege facts sufficient to satisfy that standard.

Plaintiffs argue, instead, that the Court should apply a less stringent standard, requiring "only knowing access and conduct undertaken without permission, not circumvention of technological barriers." *See* Opp. at 8. For support, Plaintiffs rely on *Bui-Ford* and *McClung*, both of which relied,

---

[2] Plaintiffs argue that their CDAFA claim is not subject to Rule 9(b)'s heightened pleading standard. The case law does not support Plaintiffs' position. *See* Mot. at 3–4. Moreover, Plaintiffs cannot avoid this heightened standard by strategically omitting the word "fraud" from their characterization of the allegations purportedly giving rise to their CDAFA claim—a statute that includes the word "fraud" in its very title. *See, e.g., Doe I v. Google LLC*, No. 23-CV-02431-VC, 2024 WL 3490744, at *5 (N.D. Cal. July 22, 2024). In any event, Plaintiffs' CDAFA claim fails under even the regular pleading standard.

in turn, on *Christensen*'s construction of CDAFA. However, as recognized in *Bui-Ford*, with respect to the specific sections of CDAFA at issue here, *Christensen* **did not** "displace case law requiring a defendant to 'circumvent[ ] technical or code based barriers' to access a computer 'without permission' . . .." *Bui-Ford v. Tesla, Inc.*, No. 4:23-cv-02321, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024) (citing *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053 (N.D. Cal. 2014) ("Courts in this district have interpreted 'without permission' to mean 'in a manner that circumvents technical or code based barriers in place to restrict or bar a user's access.'")).

While true that, in *McClung*, this Court held that "CDAFA does not require unauthorized access to information, but rather the unauthorized taking and using of such information," *McClung v. AddShopper, Inc.* No. 23-cv-01996-VC, 2024 WL 189006, at *4 (N.D. Cal. Jan. 17, 2024), it reached that decision without the benefit of a number of subsequent court decisions, including in this District, which examined *Christensen* and highlighted its limited reach—decisions including those cited in Nexstar's motion, *see* Mot. at 3, which Plaintiffs did not even attempt to refute or distinguish.

In any event, Plaintiffs' allegations fail even under *McClung* because, by inputting Nexstar's Website address into their web browsers and hitting enter, Plaintiffs authorized their devices to send IP addresses to the Website's server so that the server would know where to return the requested webpage (i.e., back to the IP addresses where the requests originated). Because IP addresses are not in and of themselves private data, *see* Mot. at 8, Nexstar was within its right to share that device-level data with others, including through the use of tracker cookies.

The other cases Plaintiffs cite in support of their CDAFA argument, *see* Opp. at 9–11, are factually distinguishable. Unlike in this case, which centers on Nexstar's alleged interception of device IP addresses, the cases Plaintiffs cited involved allegations that the defendants collected information beyond what is automatically disclosed by a user's device each time they visit a website. *See, e.g.*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1035 (S.D. Cal. 2023) (alleging collection of, among other things, communications from plaintiff's phone); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1132 (N.D. Cal. 2010) (alleging collection of login credentials and software

license keys); *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007) (alleging use of log-in credentials).

Nor are the allegations in this case on equal footing with those at issue in *In re Carrier IQ, Inc.*, which involved the installation of software on the plaintiffs' devices that had "deeply hidden" code "'designed in such a way to render ineffective any barriers the Plaintiffs might wish to use to prevent access' to their private information." 78 F. Supp. 3d 1051, 1101 (N.D. Cal. 2015); *see also Greenley*, 684 F. Supp. 3d at 1049 (alleging defendant circumvented an iPhone feature allowing users to turn off tracking). Here, in contrast, Plaintiffs' claims are based on Nexstar's alleged use of third-party cookies that are present on almost every website. They do not allege that cookies on the Website collected their private information despite some effort by Plaintiffs to block them, or that the Website's cookies would have collected such information even if Plaintiffs had attempted to block them. To the contrary, by alleging that cookies get "**re-installed** instantly on the user's next visit," *see* Compl. ¶ 71 (emphasis added), Plaintiffs implicitly admit that they do, in fact, have the ability to clear any alleged cookies from their browsers—by simply refraining from visiting Nexstar's Website upon clearing the cookies. That alone distinguishes this case from *In re Carrier IQ, Inc.* and *Greenley* and renders CDAFA's application inappropriate here.

B. Plaintiffs have not suffered any cognizable form of "damage" or "loss."

Plaintiffs claim they can satisfy CDAFA's damage or loss element by alleging "(1) the misappropriation of users' data that carries financial value and (2) the consumption of additional device and energy resources and related increased costs to users." *See* Opp. at 11–12. They are mistaken. The first category of damages is precisely what the court in *Cottle* held was **not** sufficient to satisfy CDAFA's damage or loss element. *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (holding that "the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data" is not "'damage or loss' within the meaning of the CDAFA"). In any event, even if misappropriation, alone, were enough, this Court has made clear that a plaintiff must at least articulate their theory of loss in a "concrete way." *Lineberry, et al.*

*v. AddShopper, Inc., et al.*, No. 23-cv-01996-VC, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025). Generic allegations about how misappropriation of a plaintiff's data could theoretically cause a decrease in value, such as those relied on by Plaintiffs here, are not sufficient. *See id.* at *2–3.

The second category of damages on which Plaintiffs rely—i.e., consumption of device energy and increased operating costs—also misses the mark. To start, the sole paragraph in which Plaintiffs generically allege that Nexstar's use of third-party cookies may drain their devices' energy is nothing more than a hypothetical, *see* Compl. ¶ 112. None of the Plaintiffs alleged that their devices actually suffered energy loss as a result of using Nexstar's website. Nor have Plaintiffs alleged any injury to their devices' resources that resulted from "systemic rather than episodic" use. *See In re Carrier IQ, Inc.*, 78 F. Supp. at 1051, 1066; *see also Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200 (N.D. Cal. 2019). Accordingly, Plaintiffs' CDAFA claim fails.

## III. Plaintiffs' Allegations Do Not Give Rise To A Viable Claim Under CIPA.

### A. Plaintiffs have not alleged that Nexstar used a "pen register" device.

Plaintiffs do not meaningfully dispute that the primary consideration in determining whether a device is a "pen register" is the type of information it collects. *See* Mot. at 5. Yet, in their Opposition, they focus primarily on addressing ancillary issues—including whether the type of technology cookies constitute, or the processes they use, fall within the scope of California's pen register statute—purporting to rebut arguments Nexstar did not raise. *See* Opp. at 13–14.

As related to the type of information pen registers collect, Plaintiffs claim that "[t]here is no limitation indicating that the information relates only to telephone numbers or only to the destination, versus the source, as Nexstar claims." Opp. at 14. Plaintiffs' position is not supported by case law and does not comport with the history of pen register usage or common sense.

Pen register devices have historically been attached to a phone line associated with a phone number **already known** to the user of the pen register device (typically, law enforcement), to monitor and track previously-unknown phone numbers that the monitored line dials or receives. Although the devices and processes used to monitor communications have morphed over time with advances

in technology, pen registers and trap and trace devices still capture the same type of information: source information sent to the monitored device about where an incoming signal is originating (such as a telephone number or IP address), and information about where a signal sent from the monitored device is going. There is no need to collect information about the device being monitored, because that information must be known before a pen register can even be installed. *See, e.g.*, Cal. Pen. Code § 638.52(d)(3) (requiring "[t]he number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached" before a court order will be issued).

Plaintiffs ignore this and seek to expand the type of information collected by pen registers to include a monitored device's own IP address. But adopting Plaintiffs' expansive view of California's pen register statute would effectively criminalize the Internet at large, by subjecting all websites using ubiquitous tracker cookies, including Nexstar, to liability under CIPA. Nothing in CIPA § 638.51 suggests the legislature intended such widespread application or profound consequences.

B. <u>Collection and disclosure of IP addresses does not give rise to a cognizable injury.</u>

Plaintiffs' CIPA claim also fails because they cannot demonstrate that Nexstar's mere collection of IP addresses and equivalent device-level information is sufficient to establish standing. *See* Mot. at 7–8. Contrary to what Plaintiffs suggest, IP addresses and other device information, alone, do not constitute personal identifying information (PII). As opposed to generally accepted forms of PII, an IP address is associated with a device or network, not any specific person. While possible that the collection of a device's IP address, together with PII attributable to a specific person, might give rise to standing, Plaintiffs, here, allege only the collection of IP addresses and other equivalent device information and do not contend Nexstar collected any PII. Accordingly, Plaintiffs' alleged "injury" is too "abstract and hypothetical." *See Rodriguez v. Fountain9, Inc.*, 2024 WL 3886811, at *3–4 (Cal. Super. Ct. July 9, 2024).

The cases on which Plaintiffs rely to support their standing argument are inapposite; in none of them did the plaintiffs assert they had standing based merely on the collection of their IP addresses or equivalent device information. *See, e.g.*, *Javier v. Assurance IQ*, No. 21-16351, 2022 WL

1744107 at *1 (9th Cir. 2022) (alleging collection of sensitive information used to create life insurance policies); *Greenley*, 684 F. Supp. at 1182 (alleging surreptitious collection of specific geolocation data,[3] spending habits, and personal characteristics); *Moody v. C2 Educ. Sys., Inc.*, 742 F. Supp. 3d 1072, 1074–75 (C.D. Cal. 2024) (alleging collection of user's name, date of birth, and address). Thus, Plaintiffs lack standing to assert a CIPA claim.

**IV. Plaintiffs' Allegations Do Not Give Rise To A Viable Invasion of Privacy Claim.**

A. <u>None of the cases on which Plaintiffs rely hold that a privacy interest or reasonable expectation of privacy exists in this context.</u>

Plaintiffs have not, and cannot, demonstrate that they hold a privacy interest in their IP addresses or equivalent device information. IP addresses are not personal information in which plaintiffs can hold a privacy interest. *See* Mot. at 11. Moreover, courts agree that plaintiffs cannot expect privacy over information that is routinely disclosed to third parties through their normal use of the Internet. *See, e.g., Acevedo-Lemus*, 2016 WL 4208436, at *4 (finding defendant lacked expectation of privacy in IP address "because he routinely disclosed it to third parties . . . and websites he visited on the open Internet").

B. <u>Using cookies to collect device information does not constitute a serious invasion of privacy.</u>

Highly offensive conduct is that which amounts to "an exceptional kind of prying into another's private affairs." *McClung*, 2024 WL 189006 at *4. "The California Constitution and the common law set a high bar for an invasion of privacy claim. Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *see also McClung*, 2024 WL 189006, at *4.

---

[3] Taking Plaintiffs' allegations as true, IP addresses provide, at most, information related to a device's state, city or zip code. Compl. ¶ 55. Plaintiffs do not allege—because they cannot—that IP addresses can be used to ascertain a specific person's movements or specific locations with precision, unlike the geolocation data allegedly collected in *Greenley*. *See* 684 F. Supp. 3d at 1035.

The cases Plaintiffs cite in their Opposition all met that "high bar" by alleging the interception of sensitive personal information, often in combination with allegations that the defendants affirmatively promised they would not collect such information. *See, e.g.*, *In re Facebook Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020) (alleging that Facebook tracked users' browsing history, including on websites other than Facebook, while they were logged out of their Facebook account, despite Facebook's representation that it did not track such information); *see also Calhoun v. Google*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021). Here, in contrast, Plaintiffs allege only that Nexstar used third-party tracker cookies to collect IP addresses and equivalent device data without their knowledge. Plaintiffs have not cited a single case in which a court has held that the collection of this type of information, alone, gives rise to a serious invasion of privacy.

## V. Plaintiffs' Allegations Do Not Give Rise To A Viable Unjust Enrichment Claim.

Plaintiffs argue that their unjust enrichment claim is an "independent cause of action," Opp. at 20, despite Ninth Circuit precedent to the contrary. *See Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). While some courts have been willing to construe an unjust enrichment claim as a quasi-contract cause of action, *see McClung*, 2024 WL 189006, at *4, dismissal would still be required here because Plaintiffs have not alleged facts sufficient to establish that a quasi-contract exists between them and Nexstar.

Plaintiffs' reliance on *Facebook Tracking* is misplaced. *See* Opp. at 20–21. In that case, Facebook allegedly tracked users' browsing history and extensive information about each user, including while they were logged out of Facebook and browsing other websites. 956 F.3d 589 (9th Cir. 2020). Here, Plaintiffs allege only that the cookies at issue collected information about their devices (namely, IP addresses) and, unlike the data at issue in *Facebook Tracking*, Plaintiffs have no legally protected interest device-level data.

## VI. Plaintiffs Do Not Have Standing To Bring A UCL Claim.

Plaintiffs argue that they have standing to bring a UCL claim "because Nexstar took their valuable data without permission and then exploited it for profit." *see* Opp. at 22. However, it is well

established, to the contrary, that "personal information does not constitute property for the purposes of a UCL claim." *In re Facebook Priv. Litigation*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd*, 572 F.App'x 494, 494 (9th Cir. 2014); *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (holding that "[t]he weight of the authority in the district and the state" establishes that "the 'mere misappropriation of personal information' does not establish compensable damages").

Plaintiffs' reliance on *Calhoun* and *Brown* is misplaced. In those cases, the plaintiffs' UCL claims were premised on allegations that Google made certain assurances about the use of their data. *Calhoun*, 526 F. Supp. 3d at 636; *Brown v. Google LLC*, 685 F. Supp. 3d 909, 919 (N.D. Cal. 2023). Here, in contrast, Plaintiffs do not allege that Nexstar made any such assurances. Moreover, in this case, Plaintiffs allege that Nexstar intercepted device-level data only, whereas the plaintiffs in *Calhoun* and *Brown* claimed that Google collected device information **and additional personal information**. *See Calhoun*, 526 F. Supp. at 613; *Brown*, 685 F. Supp. at 919.

The remaining cases on which Plaintiffs rely are also distinguishable. The court in *In re Anthem Inc. Data Breach Litigation* held that the plaintiffs had standing to assert a UCL claim where cyber attackers "extract[ed] massive amounts of data" including names, dates of birth, social security numbers, health care ID numbers, home addresses, medical history, test records, dates of service, amongst other highly sensitive information. No. 15-MD-02617-LHK, 2016 WL 3029783 at *2 (N.D. Cal. May 17, 2016). Similarly, in *In re Yahoo!*, the court held plaintiffs had standing because they alleged their PII, including login information, date of birth, hashed passwords, and cell phone numbers, had been leaked and was "being sold by hackers on the dark web," causing their PII to lose value. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752, 2017 WL 3727318 at *14 (N.D. Cal. Aug. 30, 2017). While those courts have been willing to find UCL standing based on the theft of sensitive financial and health data that holds value on the dark web, no court has done so under the circumstances presented here.

## VII. Conclusion

For the reasons set forth above and in Nexstar's motion, Nexstar respectfully requests that the Court dismiss all claims in the First Consolidated Complaint, with prejudice.

DATED: March 6, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

BY: *_/s/ Brianna R. Howard_*
Scott S. Humphreys
Brianna R. Howard
J. Matt Thornton (pro hac application pending)

Attorneys for Defendant Nexstar Media Inc.